## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

GARFIELD SPENCE

    Plaintiff,

vs.                                                         INJUNCTIVE RELIEF SOUGHT

PINE TRAIL SQUARE, LLC.

    Defendant.

_____/

## COMPLAINT

Plaintiff, GARFIELD SPENCE ("Plaintiff"), by and through the undersigned counsel,

hereby files this Complaint and sues PINE TRAIL SQUARE, LLC. (referred to as "Defendant")

a for profit entity, for declaratory and injunctive relief, attorneys' fees, expenses and costs

(including, but not limited to, court costs and expert fees) pursuant to 42 U.S.C. § 12182 et. seq.,

and the 2010 Americans with Disabilities Act ("ADA") and alleges as follows:

### JURISDICTION AND VENUE

1.      This Court is vested with original jurisdiction over this action pursuant to

28 U.S.C. §§ 1331, 343 for Plaintiff's claims arising under Title 42 U.S.C. § 12182 et. seq., based on

Defendant's violations of Title III of the ADA. *See also,* 28 U.S.C. §§ 2201, 2202, as well as the 2010

ADA Standards.

2.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(B) and Internal

Operating Procedures for the United States District Court for the Southern District of Florida in

that all events giving rise to the lawsuit occurred in Palm Beach County, Florida.

## **PARTIES**

3.     Plaintiff, GARFIELD SPENCE is *sui juris* and is a resident of the State of Florida.

4.     Upon information and belief, Defendant is the lessee, operator, owner and/or lessor of the Real Property, which is subject to this suit, and is located at 1937 N Military Tr. West Palm Beach, FL. ("Premises"), and is the owner of the improvements where Premises is located.

5.     Defendant is authorized to conduct, and is in fact conducting, business within the state of Florida.

6.     Plaintiff is an individual with numerous disabilities and is a double amputee which results in absolutely no use of the legs and requires him to use and remain in a wheelchair**.** The above listed disability and symptoms cause sudden onsets of severe pain and substantially limit Plaintiff's major life activities. At the time of Plaintiff's visit to the Premises in February of 2024 (and prior to instituting this action), Plaintiff suffered from a "qualified disability" under the ADA, and required the use of fully accessible parking spaces and fully accessible paths of travel throughout the facility. Plaintiff personally visited the Premises, but was denied full and equal access and full and equal enjoyment of the facilities and amenities within the Premises, even though he would be classified as a "bona fide patron".

7.     Plaintiff, in his individual capacity, will absolutely return to the Premises and avail himself of the services offered when Defendant modifies the Premises or modifies the

policies and practices to accommodate individuals who have physical disabilities.

8.      Plaintiff is continuously aware of the violations at Defendant's Premises and is aware that it would be a futile gesture to return to the Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination.

9.      Plaintiff has suffered, and will continue to suffer, direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.

10.     Plaintiff would like to be able to be a patron of the Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public, but is currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Premises until corrective measures are taken at the Premises to eliminate the discrimination against persons with physical disabilities.

11.     Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations. When acting as a "tester", Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least of those that Plaintiff is able to access; tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to Premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other subsequent visits, Plaintiff also intends to visit the Premises regularly to verify its compliance or non-compliance with the ADA,

and its maintenance of the accessible features of Premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester", visited Premises, encountered barriers to access at Premises, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein. It is Plaintiff's belief that said violations will not be corrected without Court intervention, and thus Plaintiff will suffer legal harm and injury in the near future.

12.     Plaintiff, in his capacity as a tester, will absolutely return to the Premises when Defendant modifies the Premises or modifies the policies and practices to accommodate individuals who have physical disabilities to confirm said modifications have been completed in accordance with the requirements of the ADA.

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

13.     Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 12 above as if fully stated herein.

14.     On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq. Commercial enterprises were provided one and a half (1.5) years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant(s) have ten (10) or fewer employees and gross receipts of $500,000.00 or less. *See* 42 U.S.C. § 12182; 28 C.F.R. § 36.508(a).

15.     Congress found, among other things, that:

   a.   some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

   b.   historically, society has tended to isolate and segregate individuals with

disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

c.  discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

d.  individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices. Exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and,

e.  the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and accosts the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

Congress explicitly stated that the purpose of the ADA was to:

f.  provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

g.  provide clear, strong, consistent, enforceable standards addressing discrimination

against individuals with disabilities; and

h. invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

U.S.C. § 12101(b)(1)(2) and (4).

17.     Pursuant to 42 U.S.C. § 12182(7), 28 C.F.R. § 36.104 and the 2010 ADA Standards, Defendant's Premises is a place of public accommodation covered by the ADA by the fact it provides services to the general public and must be in compliance therewith.

18.     Defendant has discriminated and continues to discriminate against Plaintiff and others who are similarly situated, by denying access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations located at the Premises, as prohibited by 42 U.S.C. § 12182 and 42 U.S.C. § 12101 et. seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv).

19.     Plaintiff has visited Premises, and has been denied full and safe equal access to the facilities and therefore suffered an injury in fact.

20.     Plaintiff would like to return and enjoy the goods and/or services at Premises on a spontaneous, full and equal basis. However, Plaintiff is precluded from doing so by the Defendant's failure and refusal to provide disabled persons with full and equal access to its facilities. Therefore, Plaintiff continues to suffer from discrimination and injury due to the architectural barriers that are in violation of the ADA.

21.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General promulgated, Federal Regulations to implement the requirements of the ADA. *See* 28 C.F.R. § 36 and its successor the 2010 ADA

Standards ADA Accessibility guidelines (hereinafter referred to as "ADAAG"), 28 C.F.R. § 36, under which said Department may obtain civil penalties of up to $55,000.00 for the first violation and $110,000.00 for and subsequent violation.

22. Based on a preliminary inspection of the Premises, Defendants are in violation of 42 USC § 12182 et. seq. and the 2010 American Disabilities Act Standards et. seq., and is discriminating against Plaintiff as a result of but not limited to, inter alia, the following specific violations:

PARKING LOT VIOLATIONS

i. Due to the fact that the curb encroaches into space required by the access aisle on the southside of the property, the access aisle does not extend the full length of the accessible space in violation of section 502.3.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property in front of Pet Hospital.

ii. Due to the fact that the curb encroaches into space required by the access aisle on the southside of the property, the access aisle is in violation of section 502.4 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to enter and exit his vehicle due to the curb located where the access aisle should be.

iii. On the accessible route/ramp leading to the premises from the parking lot, there is a vertical rise in the threshold connecting the accessible ramp or route to the premises that is in violation of Section 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for

Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps and/or routes are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

iv.   In the access aisle of one particular disabled parking spot, due to a failure to enact a policy of proper grounds maintenance, there are cracks and risen surfaces that create a vertical rise of approximately half an inch as well as foliage in the access aisle. As a result, the ground surfaces of the accessible route have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Section 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units.

v.   As related to the parking spot in front of Brother's Farmer Market and towards the north end of the parking lot of the property,  access aisles adjacent to ADA parking spots are not clearly marked as to discourage parking in the access aisles in violation of 2010 ADA Standard 502.3.3

EL MARIACHI RESTAURANT RESTROOM VIOLATIONS

vi.   The lavatories and/or sinks in the restrooms have exposed pipes and surfaces and are not insulated or configured to protect against contact in violation of section 606.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the sink as the pipes underneath the sink typically have sharp surfaces and/or hot pipes,

and since individuals in wheelchairs use a sink while seated, their legs are particularly vulnerable to these threats.

vii.   The restroom door is not self-closing and violates section 604.8.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to utilize the restroom facilities safely and privately.

viii.   The restroom lacks signage in compliance with sections 216.8 and 703 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

ix.   The height of coat hook located in accessible restroom stall is above 48 (forty-eight) inches from the finished floor in violation of section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the coat hook as individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

x.   The height of the bottom edge of the reflective surface of the mirror in the bathroom is above the 40 inch maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to properly utilize the mirror in the restroom since Plaintiff is sitting in a wheelchair and is lower than a person standing up

xi.   The locking mechanism of the door hardware providing access to the restrooms requires tight grasping and twisting of the wrist in violation of Section 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

xii.     Defendant fails to adhere to a policy, practice and procedure to ensure that all

facilities are readily accessible to and usable by disabled individuals.

23.      To the best of Plaintiff's belief and knowledge, Defendant has failed to eliminate

the specific violations set forth in paragraph 22 herein.

24.      Although Defendant is charged with having knowledge of the violations,

Defendant may not have actual knowledge of said violations until this Complaint makes

Defendant aware of same.

25.      To date, the readily achievable barriers and other violations of the ADA still exist

and have not been remedied or altered in such a way as to effectuate compliance with the

provisions of the ADA.

26.      As the owner, lessor, lessee or operator of the Premises, Defendants are required

to comply with the ADA. To the extent the Premises, or portions thereof, existed and were

occupied prior to January 26, 1992, the owner, lessor, lessee or operator has been under a

continuing obligation to remove architectural barriers at the Premises where removal was readily

achievable, as required by 28 C.F.R. §36.402.

27.      To the extent the Premises, or portions thereof, were constructed for occupancy

after January 26, 1993 the owner, lessor, lessee or operator of the Premises was under an

obligation to design and construct such Premises such that it is readily accessible to and usable

by individuals with disabilities, as required by 28 C.F.R. §36.401.

28.      Plaintiff has retained the undersigned counsel for the filing and prosecution of

this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid

by Defendant, pursuant to 42 U.S.C. § 12205.

29.      All of the above violations are readily achievable to modify in order to bring

Premises or the Facility/Property into compliance with the ADA.

30.    In instance(s) where the 2010 ADAAG standard does not apply, the 1991 ADAAG standard applies and all of the violations listed in paragraph 22 herein can be applied to the 1991 ADAAG standards.

31.    Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an order to alter the subject facility to make them readily accessible to and useable by individuals with disabilities to the extent required by the ADA and closing the Subject Facility until the requisite modifications are completed.

WHEREFORE, Plaintiff demands judgment against Defendants and requests the following injunctive and declaratory relief:

1.  That this Court declares that Premises owned, operated and/or controlled by Defendants are in violation of the ADA;
2.  That this Court enter an Order requiring Defendants to alter their facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;
3.  That this Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendants to undertake and complete corrective procedures to Premises;
4.  That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff; and,
5.  That this Court award such other and further relief as it may deem necessary, just and proper.

Dated: February 19, 2024

/s/ Alberto R. Leal.
Alberto R. Leal, Esq., P.A.
Florida Bar No.: 1002345
8927 Hypoluxo Rd. #157
Lake Worth, FL 33467
Phone: 954-637-1868
E-Mail: albertolealesq@gmail.com
Attorney for Plaintiff